[No. 15495.   Department Two.   January 15, 1920.]

## E. S. JORDAN, *Appellant,* v. SPOKANE, PORTLAND & SEATTLE RAILWAY COMPANY, *Respondent.*[1]

TRIAL (56, 58)—TAKING CASE FROM JURY—NONSUIT. In order to sustain a nonsuit it must appear as a matter of law that there was neither evidence nor reasonable inference therefrom which would have sustained a verdict in plaintiff's favor.

NEGLIGENCE (3)—FIRES—DUTY TO CONTROL. An owner of premises must exercise reasonable care to prevent the spread of fire, started on his premises without his fault.

SAME (3). Negligence on the part of a railroad company in permitting a fire, discovered on its premises, to spread to plaintiff's property may be inferred, and plaintiff makes out a prima facie case, where there was evidence that defendant had knowledge of it when it was a small affair easily extinguishable, with men at hand for the purpose, and that the season was unusually dry and the surroundings easily ignitable.

TRIAL (13)—VIEW—DISCRETION. It is within the discretion of the trial court to grant or deny a request that the jury be permitted to view the premises.

Appeal from a judgment of the superior court for Spokane county, Carey, J., entered April 17, 1918, upon granting a nonsuit, dismissing an action for damages to property destroyed by fire.   Reversed.

*J. S. McDonald* and *Ayers, McDonald & Greenough,* for appellant.

*Cannon & Ferris,* for respondent.

TOLMAN, J.—This appeal is from a judgment of nonsuit entered at the close of plaintiff's case, and in order to sustain the judgment it must appear, as a matter of law, that there is neither evidence nor reasonable inference therefrom which would have sus-

[1] Reported in 186 Pac. 875.

tained a verdict in plaintiff's favor. *Godefroy v. Hupp*, 93 Wash. 371, 160 Pac. 1056, Ann. Cas. 1918E 494; *Fobes Supply Co. v. Kendrick*, 88 Wash. 284, 152 Pac. 1028.

Appellant, as plaintiff below, brought this action to recover damages to his property caused by a fire alleged to have been set by respondent company, its servants and agents, and by them permitted to remain and burn on its right of way, and negligently and carelessly allowed by them to escape therefrom onto appellant's land adjoining, there consuming his property and causing the damages complained of. There is evidence that the fire was first seen by a neighbor burning on respondent's right of way on the side of the track opposite from appellant's land, and in the language of the witness:

"A. It was on my side of the track where there had been a construction track built upon the right of way, they called it the overland track, and the fire was burning up onto that track and I went and asked the section men, I suppose it was the section men working on the track, and they came and helped me fight the fire out on that side, and I seen the fire on the other side of the track between the track and the railroad. Q. What was it burning there? A. That was ties and peat. Q. When did you next see the fire and where was the fire? A. Then the next day I came out to watch that fire again and I seen where the fire had gone over this waste dump along somewhere close to the bluff, I do not remember whether it was fifty yards away from the bluff or not, but there was one fire close to the bluff and the main fire over here because there was ashes there where it burned. Q. Where did it go when it went over the bluff? A. Went onto the Jordan—or on the other piece of the right of way, and then on Jordan's land, having burned over, and then up on the scab land, timber land with some bunch grass in it and it was burning the hay stack when I came from my place, that is what called my attention to it."

This appears to be the only evidence as to the origin of the fire, the only knowledge of its existence brought home to respondent, and the only evidence tending to show what respondent did or failed to do in the matter of preventing the spread of the fire onto appellant's property. But with this may also be considered other evidence in the case, to the effect that the fire occurred at the dryest season of an unusually dry year, and that the land, both on the right of way and that of appellant adjoining, as well as the embankment thrown up along the line which divided them, was all of a peaty nature which held and permitted fire to spread readily.

Respondent's main argument here is that there was no evidence as to the origin of the fire, no evidence that respondent failed to use reasonable means to prevent its escape and spread, and that negligence will not be presumed. In other words, that the burden was on appellant to offer evidence to show that respondent, after knowledge of the existence of the fire on its property, did not use reasonable means to prevent its escape onto the land of appellant. While, on the contrary, appellant contends that, having offered evidence of the existence of the fire on respondent's property, evidence tending to show knowledge thereof on the part of respondent, and evidence tending to show the escape of the fire to appellant's land, the jury might draw the inference therefrom that respondent negligently omitted to use reasonable means to prevent such escape and spread. In *Sandberg v. Cavanaugh Timber Co.*, 95 Wash. 556, 164 Pac. 200, referring to the duty of one on whose premises a fire is started by some agency not under his control, Judge Parker, speaking for the court, said:

"The decisions touching this exact question, however, seem to be in harmony in holding that there is a measure of responsibility on the part of an owner

growing out of such a situation which requires him
to use reasonable effort to prevent the spread of a fire
occurring upon his premises, apart from his own act
or neglect attending the starting of the fire, which may
render him liable to his neighbor as for negligence.''

And in the same opinion quotes from the language of
Judge Bunn in *Farrell v. Minneapolis & Rainy River
R. Co.*, 121 Minn. 357, 141 N. W. 491, 45 L. R. A.
(N. S.) 215, as follows:

''Was there a legal duty resting on defendant to use
reasonable care to prevent the spread of this fire? We
think there was.  This is not holding that a railroad
company must make its right of way a barrier to pre-
vent the spread of fires for the starting of which it is
not responsible, nor does a decision that such a duty
rested on defendant establish any new doctrine.  It is
an application of the old rule of *'sic utere tuo.'*  If a
fire started on the right of way of a railroad, or on
land of a private owner by the carelessness of boys,
the matches of smokers, or from any cause for which
the landowner is not responsible, and the latter
knows of the fire and knows that if not controlled it
will spread and destroy valuable property of his neigh-
bor, there is a duty to use reasonable care to prevent
this result.''

While these authorities do not discuss the exact ques-
tion raised here, they are quoted to show the duty de-
volving upon one upon whose premises a fire starts
without his fault, which duty must be borne in mind
in order to intelligently discuss the question here
raised.  In *McCann v. Chicago, Milwaukee & Puget
Sound R. Co.*, 91 Wash. 626, 158 Pac. 243, plaintiff's
evidence showed fires on defendant's land early in the
afternoon, and one starting on his own land a few
hours later, with a strong wind blowing from the
former in the direction of the latter, and the jury ap-
pears to have been permitted to draw the inference
that no reasonable efforts were put forth to prevent
the spread of the fire.

In *Stephens v. Mutual Lumber Co.,* 103 Wash. 1, 173 Pac. 1031, this court, speaking through Judge Chadwick, said:

"The real question is whether appellant used ordinary prudence. There is no testimony tending to show that it did not, while there is testimony that 100 or 1,000 men could not have stayed the flames after the sudden change in the wind."

And the conclusion is reached therefrom that the motion for judgment *non obstante veredicto* should have been granted. But this was after testimony from both sides, and it might very well be said that an inference proper to be drawn by the jury in the absence of any testimony might, as a matter of law, be wholly improper where there is before it evidence in detail from both sides· as to just what was done and what left undone. In fact, in the *Stephens* case, the testimony conclusively overcomes any inference of want of reasonable care.

We have examined with care all the authorities cited by respondent and find none which goes to the extent necessary to support its contentions here. We believe the better rule, and the one most consonant with the right to a jury trial, is that contended for by appellant; and in this case the fact of the fire being on respondent's premises being shown, there being evidence offered from which the jury might find ˙that it had knowledge thereof when it was but a, small affair easily extinguishable, such as had been extinguished on the other side of the right of way, with men at hand sufficient for that purpose; that the season was unusually dry, and the surroundings easily ignitable, and that, after the lapse of some interval of time, the fire was communicated to appellant's premises, might reasonably draw the inference, in the absence of any evidence to the contrary, that respondent could, by the

exercise of ordinary care, have extinguished. the fire before it was so communicated, and that it was negligent in not so doing. The motion for a nonsuit should have been denied.

The question of whether the appellant was himself guilty of negligence was also one for the jury.

It was within the discretion of the trial court to grant or deny appellant's request that the jury be permitted to view the premises where the damage occurred, and there is nothing shown to warrant us in holding that there was an abuse of discretion in the ruling complained of.

The judgment is reversed, with instructions to grant a new trial.

HOLCOMB, C. J., MOUNT, BRIDGES, and FULLERTON, JJ., concur.